IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EMMETT BETSUIE, a/k/a ANDREW
BETSUIE, and MELINDA BETSUIE,

    Plaintiffs,

vs.                                                                         No. CIV 98-528 LCS/DJS

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment, filed on April 16, 1999 *(Doc. 30)*. The Court, having considered the Motion, the memoranda submitted by the parties and the applicable law, finds that the Motion is not well-taken and it will be **denied**.

Plaintiff Emmett Betsuie ("Betsuie") was enrolled in a Tribal Work Experience Program ("TWEP"). Beginning on June 13, 1995, Betsuie was assigned to do odd jobs and maintenance work at a Teen Life Center operated by the Shiprock Service Unit of Navajo Area Indian Health Service. For participating in this program, he received an extra $55.00 per month in addition to his general assistance benefits. Betsuie was terminated from the TWEP on July 1, 1995. However, neither Betsuie nor his supervisor at the Teen Life Center, Bill Nockidennis ("Nockidennis"), realized that he was no longer enrolled in the program. Accordingly, Betsuie continued to perform work under Nockidennis' direction. On July 11, 1995, Betsuie fell from a ladder while cutting a tree branch with a chainsaw. He was injured and brought suit under the

1

Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b), 2671 *et seq.*

The United States raises four defenses. The United States first claims that this suit is barred because Betsuie's exclusive remedy for on-the-job injuries is the Federal Employees Compensation Act, 5 U.S.C. Sec. 8101-93. ("FECA"). Betsuie contends that he was not an employee for purposes of the FECA. Alternatively, the United States claims that the discretionary function exception to the Federal Tort Claims Act bars this action. As a third defense, the United States claims that summary judgment should be granted because Plaintiff has failed to establish negligence. Finally, the United States claims that Plaintiff Melinda Betsuie's loss of consortium claim should be dismissed for failure to file a tort claims notice.

I.  Applicability of the FECA

The Federal Employees Compensation Act provides the exclusive remedy to covered employees for claims resulting from personal injury sustained in the performance of their duties. *See* 5 U.S.C. § 8173. This Court has no jurisdiction over Federal Tort Claims Act claims where the FECA applies. *See Swafford v. United States*, 998 F.2d 837, 839-40 (10th Cir. 1993). When faced with a substantial question of whether an injury is covered by the FECA, courts stay Torts Claim Act proceeedings and defer to the Secretary of Labor. *See Farley v. United States*, 162 F.3d 613, 615 (10th Cir. 1998). This case need not be submitted to the Secretary of Labor if, as a matter of law, the Secretary could not find FECA coverage. *See id.* at 616 (citing *Bruni v. United States*, 964 F.2d 76, 79 (1st Cir. 1992)). Thus, the Court's initial inquiry is if there is a genuine question about whether the FECA is applicable.

The dispositive issue concerning FECA coverage is whether Betsuie was an employee when he suffered his injury. Whether a person is an employee is an oft-litigated issue, and the definition of the term varies from one statute to the next. For purposes of this case, the FECA

defines an employee as "an individual rendering personal service to the United States similar to the service of a civil officer or employee of the United States, without pay or for nominal pay, when a statute authorizes acceptance of that service . . ." 5 U.S.C. § 8101 (1)(B).

In the present case, the parties dispute only whether a statute authorizes the United States to accept the services that Plaintiff performed. Defendant cites 25 U.S.C. § 1661 (d)(1)(A) which provides:

> The Secretary, acting through the Director of the Indian Health Service, shall have the authority --
>
> (A) except to the extent provided in paragraph (2), to appoint and compensate employees for the Service in accordance with Title 5;

This statute is completely silent on the question of whether volunteer services may be accepted or whether volunteers are to be treated as employees for FECA purposes. To accept Defendant's argument that this statute confers on the Secretary the authority <u>not</u> to compensate employees, and thus bring Betsuie within the scope of the FECA, strains even the most liberal construction of the statute. Plaintiff points to several statutes cross-referenced in the annotations to 5 U.S.C. § 8101 that authorize acceptance of volunteer services for the purpose of extending FECA coverage to those individuals. *See* 16 U.S.C. § 4604 (Take Pride in America Program volunteers); 16 U.S.C. § 742f (Fish and Wildlife Service volunteers); 16 U.S.C. § 558c (Forest Service volunteers); 38 U.S.C. § 513 (Veterans' Administration). Unlike the Indian Health Service general enabling language, these statutes clearly authorize acceptance of volunteer services.

Defendant points out that the Secretary of Labor, through the Employees Compensation Appeals Board ("ECAB"), has been lenient in applying the two-prong test of whether a volunteer is covered by the FECA. In each case cited by the Defendant, the volunteer was required to

3

establish that he or she was providing personal services similar to those of an employee of the United States <u>and</u> that a statute authorized acceptance or use of the services. *See In re Levin & Smilgoff*, 45 E.C.A.B. 391 (Jan. 31, 1994); *In re Abraham*, 36 E.C.A.B. 194 (Oct. 30, 1984). In *Levin & Smilgoff*, the ECAB noted that 14 U.S.C. § 88 (b)(2) specifically authorized the Commandant of the Coast Guard to accept the services of the Coast Guard Auxiliary volunteers. *See Levin & Smilgoff,* 45 E.C.A.B. at 399. In *Abraham*, the ECAB determined that the Smithsonian Institution's charter permitted the appointment of assistants, that the Board of Regents had authorized the use of volunteers as assistants, and the Board of Regents had a longstanding policy of reporting the use of volunteer services to Congress. *See Abraham*, 36 E.C.A.B. at 198-99. Because Congress was aware that the Board of Regents had interpreted its statutory authority to include acceptance of volunteer services, the ECAB held that there was Congressional authorization for accepting volunteer services.

Unlike the cases cited by Defendant, there does not appear to be any statutory authority for extending FECA coverage to individuals such as Betsuie who are performing services under the mistaken belief that they are still participants in the TWEP. Therefore, as a matter of law, the Department of Labor would be exceeding its authority if it held that there was FECA coverage. Interpreting the general enabling language of 25 U.S.C. § 1661 (d)(1)(A) in the manner suggested by Defendant would make the second part of the test in 5 U.S.C. § 8101 (1) (B) meaningless because every statute that authorizes an agency to hire employees could be held to authorize acceptance of volunteer services.

Even if Betsuie were held to be an employee prior to his termination in the TWEP program on July 1, the termination of his TWEP eligibility provides an additional reason for excluding him from FECA coverage. The parties agree that Nockidennis requested that Betsuie

4

perform services under the mistaken belief that he was still a TWEP volunteer. Even if the Indian Health Service was authorized to accept volunteer services under TWEP, there is no statutory authority for accepting the services of an individual mistakenly called upon to perform services. Defendant's interpretation would extend FECA coverage, for example, to visitors to federal parks who are asked by a federal employee to assist in performing duties in the mistaken belief that they are participants in a volunteer program. Thus, the Court finds that no substantial question exists as to whether Plaintiff was a government employee for purposes of the F.E.C.A. on July 11, 1995.

II. Discretionary Function Exception

The discretionary function exception limits the scope of the Federal Tort Claims Act's waiver of sovereign immunity. This exception is intended to prevent litigants from using the FTCA to challenge executive-branch policy decisions. *See Franklin Savings Corp. v. United States*, ___ F.3d ___, 1999 WL 270402 (10th Cir. 1999). The Supreme Court has set forth a two part test for determining whether the discretionary function test applies. *See Berkowitz v. United States*, 486 U.S. 531 (1988). First, the court must determine whether the alleged conduct of the defendant "involves an element of judgment or choice" or whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Id.* at 536. If the conduct involves an element of judgment or choice, then the court must go on to determine whether the judgment was based on considerations of public policy. *See id.* at 537.

Mr. Nockidennis' alleged conduct does not meet either part of the *Berkowitz* test. Plaintiff points out that the Shiprock Service Unit had a policy requiring that employees be certified before being allowed to use certain equipment. At a minimum, there is a genuine question of material fact as to whether Mr. Betsuie should have been certified as competent before using a chain saw to cut branches while on an extension ladder. There is also a question of fact as to whether any

5

training provided to Betsuie before he used the chain saw and ladder complied with the certification policy.

The fact that Betsuie was not an employee at the time of the incident does not make Nockidennis' action "discretionary" for the purpose of the discretionary function exception. The purpose of the exception is to avoid stifling executive branch employees from making discretionary policy judgments. If Nockidennis believed Betsuie to be an employee, then Nockidennis would be performing an act that he should have known to be outside his discretion if he did not follow the SSU certification policies. Therefore, Nockidennis should have been stifled from taking the action that he did by the existence of the SSU policy. Applying the discretionary function exception in such a case can serve no purpose.

Defendant does not identify any policy considerations that would be involved in Nockidennis' decision not to require certification of Betsuie. The Tenth Circuit Court of Appeals has rejected the notion that a general presumption of some policy reason underlying every decision is sufficient to meet the second part of the *Berkowitz* test. *See Duke v. Department of Agriculture*, 131 F.3d 1407, 1412 (10th Cir. 1997). Plaintiffs are not challenging the general policy of the Teen Life Center in soliciting help with day-to-day activities, nor are they challenging a general policy decision of the center not to supervise its employees. Instead, Plaintiffs allege that Nockidennis acted on his own in failing to train, supervise, and assist Betsuie. Nockidennis' alleged conduct may have involved a choice on his part, but it does not involve the policy considerations that the discretionary function exception was designed to shield from liability. If the discretionary function exception were to apply to this type of conduct, the Federal Tort Claims Act would be completely eviscerated, as almost all tortious conduct would be covered by the exception.

III. Merits of Plaintiffs' Negligence Claim

To establish a claim for negligence under New Mexico law, Plaintiffs must establish a duty of care owed to them by Defendant, breach of that duty, proximate causation, and damages. *See Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 650, 905 P.2d 185, 190 (1995). Defendants' motion for summary judgment focuses on what was the duty of care that the United States owed Betsuie, and whether the United States breached that duty. The duty of care owed to a plaintiff is a question of law, while breach of the duty of care is a question for the trier of fact. *See Wilschinsky v. Medina*, 108 N.M. 511, 513-16, 775 P.2d 713, 715-18 (1989).

Plaintiffs present evidence that Nockidennis directed Betsuie to perform the job of trimming tree branches using an extension ladder and a chain saw. In master and servant cases, New Mexico recognizes a duty of the master to exercise reasonable care to protect a servant from injury. *See Arvas v. Feather's Jewelers*, 92 N.M. 89, 91, 582 P.2d 1302, 1304 (Ct. App. 1978). There is evidence that both Betsuie and Nockidennis believed Nockidennis had the authority, as a supervisor under the TWEP, to direct Betsuie to perform jobs. Even if Betsuie was not an actual employee at the time of the incident, a supervisor with apparent authority who directs that a job be performed has a duty to exercise reasonable care to insure that adequate safety precautions are taken. *Cf. Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 902 P.2d 1033 (Ct. App. 1995) (gas well operator's duty to provide safe workplace extends to independent subcontractors and their employees). Plaintiffs present evidence that Nockidennis provided Betsuie with a chain saw too large for the job, failed to assist Betsuie or serve as a "spotter," and did not insure that Betsuie was properly trained before he used the chainsaw on the ladder. There are genuine questions of fact as to whether Nockidennis breached the duty of ordinary care.

Whether the danger of a ladder slipping while using a chainsaw is "open and obvious" is a

7

question of fact under the circumstances of this case. At best, the "open and obvious" nature of the risk would relieve Defendant of its duty to warn Betsuie; it would not relieve Defendant of its duty to provide reasonable safety precautions. *See Diaz v. McMahon*, 112 N.M. 788, 791, 819 P.2d 1346, 1349 (Ct. App. 1991). Furthermore, under New Mexico's pure comparative negligence law, the "open and obvious" nature of the risk would merely affect the comparative fault of the parties instead of completely absolving Defendant of liability. *See Scott v. Rizzo*, 98 N.M. 682, 687, 634 P.2d 1234, 1239 (1991).

IV.  Loss of Consortium Claim

The FTCA requires, as a prerequisite to filing suit, that a claimant must present a valid administrative notice of claim to the appropriate federal agency. *See* 28 U.S.C. § 2675(a). Defendant claims that Melinda Betsuie did not present a valid notice of claim, and thus her loss of consortium claim is barred for failure to exhaust administrative remedies.

The administrative tort claims notice must satisfy three jurisdictional prerequisites:  (1) sufficient written notice must be given to the agency of the incident or claim so that the agency can investigate the claim; (2) a sum certain must be stated for the amount of money damages claimed; and (3) if the claim is filed by another on behalf of the claimant, there must be evidence of authority to bring the claim. *See Frantz v. United States*, 791 F. Supp. 445, 447 (D. Del. 1992). A spouse need not file a separate loss of consortium claim, so long as her spouse's claim contains all of the requirements for her loss of consortium claim and there is evidence that the claim is being made on her behalf. *See Boyce v. United States*, 942 F. Supp. 1220, 1222-23 (E.D. Mo. 1996) (husband's tort claim notice, together with affidavit of wife for loss of consortium, held properly presented to Veterans Administration); *Emery v. United States*, 920 F. Supp. 788 (W.D. Mich. 1996) (husband's claim form filed with agency was sufficient to put agency on

8

notice of wife's loss of consortium claim).

Melinda Betsuie's loss of consortium claim was properly presented in the tort claims notice because it satisfied each of the prerequisites. First, the notice was filed by the attorney for both Melinda and Emmett Betsuie, and provides evidence that the attorney has authority to bring the claim. Second, the notice clearly provides notice of Melinda Betsuie's loss of consortium claim, and the agency's response letter indicates that it treated the claim as made on her behalf. Finally, the claim includes a sum certain of $10,000 for loss of consortium. Melinda Betsuie's loss of consortium claim thus satisfies the jurisdictional requirements for exhaustion of administrative remedies.

V.  Conclusion

Wherefore,

IT IS ORDERED that Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment *(Doc. 30)*, filed April 16, 1999, is **denied**.

_____
LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE